### NEALL v. P. DOUGHERTY CO.

### THE SOMMERS N. SMITH.

#### (District Court, S. D. New York. February 18, 1909.)

Towage (§§ 6, 8*)—Negligence of Tug—Evidence—Services.

Towing services of the tug Sommers N. Smith to the Dougherty Company near Assateague, Va. The claim of the Dougherty Company that the tug was negligent in performing her contract *held* to be without merit. and that the owner of the Smith was entitled to recover for her services.

[Ed. Note.—For other cases, see Towage, Dec. Dig. §§ 6, 8.*]

(Syllabus by the Judge.)

Robinson. Biddle & Benedict, for Neall and the Sommers N. Smith. James J. Macklin and De Lagnel Berier, for the Dougherty Co.

ADAMS, District Judge. The first of the above entitled actions was brought by Frank L. Neall, Trustee, owner of the tug Sommers N. Smith, against the P. Dougherty Company to recover $500 for towing the barges Norfolk and Annie E. Embrey from a point off Assateague, Virginia, to Tom's Cove, near by, on the 28th of March, 1906.

The libel alleged that on the 25th of March, 1906, the master of the Smith was informed by the respondent that its tug Margaret was lying stranded at Assateague and that three barges, which had been in her tow were lying there at a safe anchorage but needed towing to Norfolk; that the respondent requested the master of the Smith to go down to Assateague and agreed to pay him $500 for towing the three barges forming the tow to Norfolk, or if he succeeded in floating the Margaret as well as in towing the barges, $700, or the same sum if the Margaret after being floated towed the barges to Norfolk; that the Smith left the Breakwater in a storm at 12.05 a. m. on the 26th, and on arriving at Assateague at 7.30 a. m., found the barges, instead of being at a safe anchorage, to be lying in the breakers so that the tug could not get within 600 fathoms of them; that the master tried. without success, to get a small tug to take a running line from the Smith to the barges and he thereupon went ashore and, by telephone. called up the master of the Margaret, then at Wollop's Beach Life Saving Station, who said a light draft boat, belonging to the respondent, was coming down from Norfolk for the barges and requested the master of the Smith to get the life savers from Assateague to run a light line from the barges, so as to heave in on the tug's hawser and then pull them out of danger; that the master of

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Smith immediately consulted with the life savers, who did not think it was a safe place to go to at that time; that on the morning of the next day (the 27th) the life savers came off to the Smith, which took them to the barges, when it was found that one of them had gone ashore the evening before; that the life savers thereupon went aboard of the Norfolk, with the tug's running line and hauled in 400 fathoms of her hawser, and made it fast to the bitts of the barge, whereupon the Smith towed the Norfolk and the Embrey, which was hanging to her stern, and laboring hard in the breakers, to a safe anchorage in Tom's Cove; that thereafter the tug Defiance, having come from Norfolk, the respondent directed the master of the Smith to turn the barges over to the Defiance and return to the Breakwater, and await instructions, which he did. It was further alleged that the service rendered to the respondent was in the nature of extraordinary towage for which $500 was a reasonable compensation.

The respondent denied many of the allegations of the libel and further stated as follows:

"Eighth: Respondent further answering alleges upon information and belief; that on or about the 23d day of March, 1906 the Steamtug Margaret owned by the libellant herein left the harbor of New York at about 12.15 p. m. having in tow the said barge Dendron which was loaded with cargo, and the barges Norfolk and Annie E. Embrey, which latter barges were light, the said tug and tow being bound for Norfolk, Virginia, the said Barge Dendron was next to the said steamtug on a hawser astern, the Norfolk following and the Annie E. Embrey being the hind barge. That on said trip aforesaid and on the day following at about 7.45 p. m. the said tug and tow, during the prevalence of a Northeast gale and heavy snow storm, endeavored to get into Tom's Cove, Virginia, and while said tug was attempting to make said cove, the captain of the said tug stopped the engines thereof and blew whistles for the barges to anchor, which they did, but that the hawser run from said steamtug to the said Barge Dendron fouled the said tug's propeller wheel, which made the said tug helpless, causing her to drift on to the beach, the said barges remaining at anchor and afloat.

That on the 25th day of March, the wind having moderated, the libellant made a contract with the representatives of the Steamtug Sommers N. Smith in consideration of the payment of Five hundred Dollars to tow the said three barges from where they were at anchor to Norfolk, and to receive the sum of Seven hundred Dollars if said tug Smith succeeded in safely rescuing the said Steamtug Margaret with said barges, the said tug Smith to be dispatched immediately to the scene where said barges were afloat and the said Steamtug Margaret on the beach, and to take said barges in tow, and if practicable to rescue the said Steamtug Margaret.

That said Steamtug Smith arrived in the vicinity of said barges on the morning of March 26th the day being clear on the morning she arrived, sea calm and said barges still afloat, and having manoeuvred about without communicating with those in charge of said barges, at about noon proceeded into Assateague Harbor and remained therein without making any effort to take any of said barges in tow, which she could easily have done. That those in charge of said barges did not know the mission of the said steamtug Smith on said day; that said barges remained afloat until 8 o'clock p. m. of the said 26th day of March, when the chain on the said barge Dendron was slipped, and she also brought up on the beach. That on the next day, to-wit the 27th day of March, the said tug Smith came out of Assateague Harbor and then took the two remaining barges in tow and proceeded into said Assateague Harbor with them where said barges safely anchored.

Respondent alleges that as a result of said Barge Dendron taking the beach as aforesaid, serious damage followed her as a consequence.

Ninth: Respondent charges that said steamtug Sommers N. Smith was

guilty of fault because of said Barge Dendron being damaged; (1) In not taking the said barge in tow on Monday, the 26th day of March, as it was her duty to do, and tow her with the other barges, which she could easily have done into Assateague Harbor, (2) In not informing those in charge of said barge through her master that she had been sent to care for said barges and tow them into Assateague Harbor, (3) That those in charge of her navigation should have known that the leaving of said barges where they were, would make them liable to such an accident as actually did befall the Dendron, (4) In that the said barge Dendron being loaded, should have been towed by said steamtug into Assateague Harbor on March 26th where she could have anchored in perfect safety."

The respondent then filed a libel against the Smith to recover $7,-500, which after, in substance, repeating the foregoing allegations of its answer with the charges of fault, charged further neglect as follows:

"Fifth: The libellant has sustained damages on account of the premises in the cost of repairs to said barge, recovering the said barge, surveyor's fees, tug hire, towages loss of freight, loss of time while said barge was undergoing repairs, and in recovering her from said beach in the sum of about Fifty five hundred dollars, and that said barge has depreciated in value because of her non-repairable condition in the sum of about Two thousand dollars, making in all about Seventy five hundred dollars."

The libellant, as respondent, denied the allegations of the Dougherty libel, alleged the truth of the substance of its own libel, and stated as follows:

"And claimant further avers that at all times on the said 26th day of March it was impossible for the said steamtug 'Sommers N. Smith' to tow or render any assistance whatever to the said barge 'Dendron' without danger of destruction to herself, which danger she was not, under the terms of her contract with the libellant, called upon to assume."

The testimony shows that the Margaret, 112 feet long, and drawing about 14 feet, was towing the three barges, tandem, from New York to Norfolk. The leading barge, the Dendron, was on a hawser of about 225 fathoms; she was followed by the Norfolk, on a hawser of about 200 fathoms, and the latter was followed by the Embrey, on a hawser of about 175 fathoms. When a little below a point off Brigantine Beach, New Jersey, a light snow storm commenced, which gradually became thicker and later it came on to blow at the rate of about 25 miles an hour from the northeast. When reaching Assateague, the master concluded to go in for the safety of the barges and having found water of less depth, he blew to the barges to anchor and stopped the tug. She drifted back and got her hawser in the wheel and subsequently went on the beach from the effect of the wind and tide. A blinding snow storm prevailed at the time. This was Saturday, March 24th. On the following morning, the master found that the tug was on Wollop's Beach ½ to ¾ of a mile from the shore, in about 12½ feet of water. She went there at high water.

News of the disaster was telegraphed to the owners of the Margaret on the 25th instant. They communicated with the tug Smith, at the Delaware Breakwater, which was informed that the Margaret was stranded at Assateague but that the barges were lying there at a safe anchorage, needing, however, to be towed to Norfolk. The

master of the Smith had heard of the disaster before and made arrangements to proceed to the scene with a wrecking crew of 8 or 9 men. After starting, the tug was recalled by her agent at the entrance to the Breakwater, by means of a signal, and being then advised of the situation and that the Dougherty Company wanted to make a bargain with the tug rather than have salvage services, the master discharged the wrecking crew and made the arrangement for compensation described above. During this day the wind shifted to the eastward. On the 26th, at 12.05 a. m., the Smith left the Breakwater and proceeded, in rough weather, to Assateague, reaching there at about 7.30 a. m. Instead of finding the barges safely anchored, as had been represented to her, she found that they were lying in or near the breakers so that they could not be approached by the Smith within a half a mile or more. She tried to get a line to them without success, striking the bottom several times in the attempt. There were two small boats there of light draft, one of them using steam and the other naptha power. The master of the Smith endeavored to get the former, the more powerful of the two, to take a line to the Dendron, which was then said to be in a dangerous situation, but the master of the small boat could not be induced to perform that service, even if he was able to in view of the existing conditions, saying he would not do it for $500. The two small boats went into the inlet, but the Smith remained in the vicinity of the barges for some time trying to do something for them, the master at times looking through his glasses for the life savers at Wollop's Beach, without seeing them. He then left the scene and went up into Assateague Harbor. About 1 o'clock he went ashore in a small boat to the Life Saving Station on Assateague Island and endeavored to induce the men there to go to the assistance of the barges, in the way of running a line. They objected, however, saying the work belonged to the Wollop's Beach Station. The master of the crew, however, connected him by telephone with that station, where the master of the Margaret responded, and said he had hired the two small boats to tow the barges out to where the Smith could reach them, but the work was too heavy for them; he also said Mr. Dougherty was on the way from Norfolk with a light draft boat and was due there some time that night, and when she came they would be able to reach the barges. As the tide was falling and the sea high, it was not deemed suitable to attempt the towing that afternoon and it was abandoned for the day. Afterwards, however, the master of the Smith talked to the master of the Assateague Life Saving Station, with a view to some action, but without result.

It appears that during the 25th, the wind was strong from the northeast, with a high sea. On the 26th, it was fresh to light from the northeast and through to south, with a high sea. On the 27th, it was light to fresh from the south, with a moderate sea. There is some evidence to the contrary respecting the earlier days, the master of the Dendron stating, for example, that there was a moderate breeze but his testimony showed that while his barge was lying at anchor in about 12 feet of water, she was drawing only 8½ feet and yet she

pounded, which of course, must have been caused by the sea, due to a wind of some force. I think there can be no reasonable doubt that the above shows the state of the weather with substantial correctness on the respective days.

The manager of the Dougherty Company in Baltimore, evidently considered that the barges were in no especial danger, when he declined to have the Smith go to their rescue, without an agreement for a fixed compensation, preferring that the contract should be for a definite sum rather than that the work should be done on a salvage basis, as was at first contemplated by those negotiating for the Smith. And the amount to which it was limited, $500, also showed that no immediate danger was apprehended by him, and that the Smith did not expect to perform other than a towage service appears by the fact that she put her wrecking crew ashore. She did not have facilities for running lines through rough water and she evidently did not expect to be called upon to do such work under the contract. Having reason to believe that the barges would be easily accessible to her and finding that they were not so complaint could not justly have been made against her, if when finding the barges were not in such a situation as she was entitled to expect, she had abandoned the matter, and resorted to the contract for her compensation. That it was not expected she would run the lines is also shown by the fact that the two small power boats had been engaged by the master of the Margaret for the purpose, doubtless under instructions from his principal, with whom he was in telephonic communication.

With reference to the claim against the Smith for the loss of the Dendron, two acts of negligence have been charged against her, first, that after her employment she did not start immediately, and, second, that she did not get a line to her on Monday and then haul her out of danger.

The first charge of fault does not require very much consideration. If the information that all of the barges were safely anchored in 14 feet of water was true, there was no reason why the Smith should go out in the storm that was raging on the 25th, and in any event nothing could have been gained by an earlier departure from the Breakwater than midnight, as it was evident that she could not work at night on the coast. She arrived at the scene of operations about 7 a. m. of the 26th, about an hour and a half before high water, which was the best time for her work.

It was not practicable for the Smith to get a line to the Dendron on Monday, the 26th. The sea was high and breaking out to, and doubtless somewhat beyond, the barges. The beach was flat with a rise of the tide of about 3 feet only, so that the barges could not be approached by a tug of the Smith's draft within ½ or ¾ of a mile. This necessitated the handling and running of a long hawser, a difficult and dangerous operation, requiring skilled services. The crew of the Smith was not of enough strength to accomplish the work. The small tug, the Gladys, would not attempt it. The master of the other small boat was also not disposed to do so. Moreover, if the line had been run, it could not have been handled on the barge with her small crew, as it finally took the life saving crew, about 10 men, to put the line aboard

of the Norfolk the next day, when the wind had moderated and the sea had calmed down somewhat, and when the Smith was able to approach more closely and use a hawser of 400 fathoms. It is urged that the Smith should have employed the Wollop's Beach crew on Monday as she did on Tuesday, but even assuming that they would have been willing to try it Monday, it is not the fault of the Smith that they were not then used. She did endeavor to get them on Monday but her telephone inquiry was answered by the master of the Margaret who was at the station, and it does not appear that he made any effort in that direction, probably because either those life savers would not go or the master of the Margaret knew that a line could not be run from the Smith on that day.

I think there can be no doubt that the master of the Smith did even more than could reasonably have been expected of him in taking his tug into danger for the purpose of performing the contract on her part.

The libellant Neall should recover for the services of the Smith but as the amount is not determinable here, it is necessary that the matter should go to a commissioner to ascertain the value of her services under the circumstances.

There does not appear to have been any neglect on the part of the Smith which led to the stranding of the Dendron and the libel of the Dougherty Company is dismissed.